CRYSTAL HOMES, INC.,
Plaintiff–Appellant,

v.

Jay RADETSKY, Defendant–Appellee.

No. 94CA0405.

Colorado Court of Appeals,
Div. III.

April 20, 1995.

Harry L. Simon, P.C., Harry L. Simon, Denver, for plaintiff-appellant.

Hall & Evans, L.L.C., Alan Epstein, Denver, for defendant-appellee.

Opinion by Judge HUME.

In this action to recover damages for negligent misrepresentation and breach of fiduciary duty, plaintiff, Crystal Homes, Inc., appeals from the 1991 summary judgment that dismissed its claims against defendant, Jay Radetsky. The judgment became final for appeal purposes in 1994 after plaintiff's claims against the other defendants, Pat Bush and Castle Rock Waterworks, Inc. (Castle Rock), were settled pursuant to a court-approved stipulation. Those defendants are not parties to this appeal. We affirm the summary judgment.

In its third amended complaint, plaintiff alleged that Radetsky was an attorney licensed to practice law in Colorado and that, prior to May 1987, plaintiff had been his "long-time client," having had many prior and confidential dealings with him.

According to the complaint, prior to May 14, 1987, defendant Bush approached plaintiff's president and invited plaintiff to enter into an arbitrage arrangement with her. The complaint alleged that, in order for plaintiff to participate in the profit-making arrangement, Bush stated it would be necessary for plaintiff to lend her $130,000. It also alleged that, as an inducement to make the loan, Bush told plaintiff that she was the president and sole stockholder of Castle Rock and that Castle Rock owned 24.699 acres of land in Douglas County free and clear of any encumbrances. Bush also represented that the appraised value of the property was $3,500,000. As collateral for the proposed loan, Bush offered plaintiff a 50 per cent interest in Castle Rock.

The complaint further alleged that, in reliance on Bush's representations, plaintiff's president attended a meeting in Dallas, Texas, on May 14, 1987, bringing the funds necessary to lend Bush the $130,000. It also alleged that, at the meeting, Bush pressured plaintiff's president to advance her the $130,000, stating that the entire arbitrage transaction would fail unless plaintiff did so. It further alleged that, as plaintiff's president was preparing to leave the meeting without making the loan, Bush asked him to speak with defendant Radetsky.

The complaint alleged that Radetsky knew of Bush's representations to plaintiff, knew that plaintiff was inexperienced in arbitrage transactions, and advised plaintiff to enter into the agreement with Bush.

According to the complaint, at the May 14 meeting in Dallas, Radetsky helped prepare a handwritten agreement among plaintiff, Bush, and Castle Rock. The next day Bush, individually and as president of Castle Rock, signed and gave plaintiff a promissory note for $130,000 secured by a 50 per cent interest in Castle Rock's outstanding stock.

In its first and second claims for relief, plaintiff asserted that Bush and Castle Rock defaulted on the loan and the agreement to deliver 50 per cent of Castle Rock's shares to plaintiff. Its third claim alleged that Bush's representations to plaintiff, both individually and as president of Castle Rock, were fraudulent.

As pertinent here, plaintiff's fourth claim for relief was directed at Radetsky for negligent misrepresentation. This claim asserted that Radetsky "knew or should have known" that plaintiff believed that Castle Rock held title to the Douglas County acreage and that plaintiff believed that a pledge of 50 per cent of Castle Rock was equivalent to 50 per cent of the acreage. It further alleged that Radetsky owed plaintiff a duty of reasonable care and had a duty to disclose to plaintiff the fact that Bush, not Castle Rock, held title to the acreage. It further asserted that Radetsky had a duty to withdraw from any discussions or negotiations when he realized that plaintiff's and Bush's interests were adverse.

Plaintiff's fifth claim asserted that Radetsky owed plaintiff a fiduciary duty to act in plaintiff's best interests. It further asserted that this duty was breached when Radetsky failed to disclose the actual ownership of the acreage, continued to discuss the loan and its collateral while knowing that Bush and plaintiff were in adverse positions, and advised plaintiff to enter into the transaction.

Radetsky filed an answer in which he denied that plaintiff had been his long-time client, that he knew of Bush's representations to plaintiff, or that he had advised plaintiff to enter into the agreement with Bush. In addition, he denied the allegations in the fourth and fifth claims for relief.

After plaintiff failed to file a timely disclosure certificate naming an expert witness to testify in support of its claims against defendant pursuant to C.R.C.P. 16, Radetsky filed a motion for summary judgment pursuant to C.R.C.P. 56. As pertinent here, Radetsky noted his previous denial that he had acted as plaintiff's attorney at any point during the alleged transactions. Further, he asserted that plaintiff had failed to produce any evidence in the form of expert testimony that Radetsky owed or breached any duty of care to plaintiff. Finally, he asserted that his own experts' reports provided uncontroverted evidence that he had not breached any applicable standard of care. Radetsky argued that plaintiff's failure to name an expert to testify concerning the prevailing standard of legal practice warranted entry of summary judgment dismissing the complaint.

Attached to the summary judgment motion were two expert opinions stating that Radetsky had not breached any fiduciary duties owed to plaintiff; that the transaction described in the complaint was not directly related to Radetsky's prior representation of plaintiff; that Radetsky made no negligent misrepresentations in connection with the transaction described in the complaint; and that Radetsky's conduct in this transaction complied with the requisite legal standard of care of lawyers practicing in the community.

Plaintiff's response to the motion asserted that the issues of Radetsky's alleged negligent misrepresentation and breach of fiduciary duty were not legal malpractice issues, but were questions of fact to be determined by a jury concerning the parties' relationship. It argued that such factual issues did not require expert testimony.

Based upon the parties' submissions, the trial court determined that, under either theory, the facts did not involve simple factual circumstances or dereliction of duty so palpable as to be apparent without presentation of expert testimony. Further, the trial court determined that plaintiff had not timely designated an expert witness and that the timely filing of a certificate of review pursuant to § 13–20–602, C.R.S. (1994 Cum.Supp.) was not a substitute for the required endorsement of an expert witness. Thus, the trial court concluded that expert testimony was necessary to establish the existence of a duty owed by Radetsky to plaintiff and that no expert had been timely endorsed. Accordingly, the court granted Radetsky's motion for summary judgment.

Plaintiff asserts three alternative grounds on appeal for its contention that the trial court's determination that an expert witness was required to present a prima facie case constituted error.

■ Because summary judgment is a drastic remedy, it must appear that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. C.R.C.P. 56(c). Further, any doubt concerning whether a material issue of fact

exists must be resolved in favor of the non-moving party. *Mancuso v. United Bank of Pueblo,* 818 P.2d 732 (Colo.1991).

## I.

Plaintiff concedes that to obtain relief on its claim for either negligent misrepresentation or breach of fiduciary duty, it must establish that Radetsky owed it a duty and breached that duty. However, relying on *Boigegrain v. Gilbert,* 784 P.2d 849 (Colo. App.1989), plaintiff first contends that defendant's breach of a duty owed to plaintiff was obvious. Specifically, plaintiff asserts that it is "within the common knowledge of laymen" that an attorney who represents two parties to a transaction and fails to disclose to one that false statements have been made by the other is guilty of either negligent misrepresentation or breach of fiduciary duty. We perceive no error in the trial court's ruling.

In *Boigegrain,* a division of this court observed that an expert witness was required to establish liability based upon an attorney's professional negligence except in cases in which the breach of duty to a client is clear and palpable. The *Boigegrain* court did not, however, address the issue in the context of the circumstances of this case.

Here, plaintiff alleged that at some time prior to May 1, 1987, plaintiff had been one of Radetsky's clients and that, in early 1987, the parties discussed future potential legal business. Accordingly, plaintiff characterizes its relationship with Radetsky at the time of the transaction in question as that of a former and/or present client, a potential future client, or an inactive present client. Under these circumstances, the question whether Radetsky owed a professional duty to plaintiff during the Dallas meeting is a complex one.

■ An attorney is not always precluded from representing a client in a transaction with a former or currently inactive client. *See In re King Resources Co.,* 20 B.R. 191 (D.Colo.1982). Whether an attorney properly may do so depends upon the nature and extent of the former legal work performed for the previous client as well as the possible relationship between the two transactions.

*See* Code of Professional Responsibility DR 5–105(C) (effective January 1, 1993, similar provision found in Colorado Rules of Professional Conduct 1.9(a)); Hennessey, *Colorado's New Rules of Professional Conduct: A More Comprehensive and Useful Guide for Lawyers,* 21 Colo.Law. 2101, 2109 (October 1992).

Resolution of that question may also depend upon, among other things, the nature and the degree of involvement the attorney had in the prior transaction or transactions. *See* Colorado Rules of Professional Conduct 1.9 (comment).

■ Hence, we agree with the trial court's conclusion that expert testimony was required to support plaintiff's claim that Radetsky owed it a professional duty and that he breached this duty at the meeting in question. *See Martinez v. Badis,* 842 P.2d 245 (Colo.1992); *Boigegrain v. Gilbert, supra.*

## II.

Plaintiff next contends, however, that no expert opinion was required to establish Radetsky's liability based upon an alleged confidential relationship between the parties independent of any lawyer-client relationship. Again, we disagree.

■ A confidential relationship giving rise to fiduciary duties may be established under certain circumstances when one party has reposed special trust or justifiable confidence in the other and that confidence is invited, accepted, or undertaken by the other. *Moses v. Diocese of Colorado,* 863 P.2d 310 (Colo.1993); *First National Bank v. Theos,* 794 P.2d 1055 (Colo.App.1990).

■ However, the foundation for any confidential or fiduciary relationship asserted here was necessarily based upon the alleged attorney-client status between the parties. There is no other basis alleged for plaintiff's asserted justifiable reposition of special trust or confidence in defendant. *See Steiger v. Burroughs,* 878 P.2d 131 (Colo.App.1994). And, the nature of any resulting special relationship and/or attendant duties arising therefrom thus would be measured against standards applicable to attorneys.

Accordingly, the record supports the trial court's conclusion that an expert opinion was required to make a prima facie case on this theory as well.

### III.

Alternatively, relying upon *Central Bank Denver N.A. v. Mehaffy, Rider, Windholz & Wilson,* 865 P.2d 862 (Colo.App.1993), *aff'd,* 892 P.2d 230 (Colo.1995), plaintiff contends that, even as a non-client, it may assert a claim for negligent misrepresentation against Radetsky by alleging reliance upon misrepresentations made in the course of his employment with the other defendants. However, we consider it unnecessary to address this issue.

■ The legal argument contained in plaintiff's response in opposition to the motion for summary judgment in the trial court was based solely upon allegations regarding the attorney-client relationship between plaintiff and Radetsky. The theory that a duty was owed to plaintiff as a non-client was never asserted. Hence, we will not address that contention raised for the first time on appeal. *See Hansen v. GAB Business Services, Inc.,* 876 P.2d 112 (Colo.App.1994).

In addition, neither this court's nor the supreme court's decision in *Central Bank Denver, supra,* determines whether expert testimony is required to define the scope of an attorney's duties to a non-client.

Judgment affirmed.

JONES and TAUBMAN, JJ., concur.